# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **PAULETTE CHAFFINS,** | ) | |
| Plaintiff | ) | Civil Action No. 1:20cv00067 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | | |

## *I. Background and Standard of Review*

Plaintiff, Paulette Chaffins, ("Chaffins"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Chaffins protectively filed applications for DIB and SSI on November 21, 2017, alleging disability as of October 16, 2017, due to poor vision; epilepsy; diabetes; anxiety; depression; carpal tunnel syndrome; diabetic retinopathy; bilateral rotator cuff tears; bilateral leg issues; memory loss; difficulty balancing; and migraine headaches. (Record, ("R."), at 16, 253-54, 260-64, 303, 331, 345.) The claims were denied initially and on reconsideration. (R. at 161-63, 166-68, 171-72, 177-82, 343.) Chaffins requested a hearing before an administrative law judge, ("ALJ"). (R. at 183-84.) A hearing was held on January 17, 2020, at which Chaffins was represented by counsel. (R. at 37-80.)

By decision dated February 24, 2020, the ALJ denied Chaffins's claims. (R. at 16-30.) The ALJ found Chaffins met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2022. (R. at 19.) The ALJ found Chaffins had not engaged in substantial gainful activity since October 16, 2017, the alleged onset date. (R. at 19.) The ALJ determined Chaffins had severe impairments, namely epilepsy; type II diabetes with retinopathy; migraine headaches; degenerative joint disease of the right shoulder; mild degenerative joint disease in both hands; carpal tunnel syndrome; unspecified depressive disorder; generalized anxiety disorder; and degenerative disc disease of the cervical spine, but she found Chaffins did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ found Chaffins had the residual functional capacity to perform simple, routine light[2] work that did not require her to climb ladders, ropes or scaffolds, but she could occasionally perform other postural movements; she could occasionally push and pull, bilaterally, and frequently handle and finger, bilaterally; she could not work at unprotected heights, near unguarded moving machinery or operate a motorized vehicle; and she would need to work in a safe environment free of holes or pits in the floors. (R. at 22.) The ALJ found Chaffins was unable to perform any of her past relevant work. (R. at 28.) Based on Chaffins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Chaffins could perform, including the jobs of an information clerk, a folder and a cafeteria attendant. (R. at 29-30.) Thus, the ALJ concluded Chaffins was not under a disability as defined by the Act, and she was not eligible for SSI and DIB benefits. (R. at 30.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2020).

After the ALJ issued her decision, Chaffins pursued her administrative appeals, (R. at 250), but the Appeals Council denied her request for review. (R. at 5-9.) Chaffins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2020). This case is before this court on Chaffins's motion for summary judgment filed May 21, 2021, and the Commissioner's motion for summary judgment filed May 28, 2021.

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2020).

*II. Facts[3]*

Chaffins was born in 1966, (R. at 253, 260), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). She has a college education and past work as a companion, a security guard, a counselor and a survey worker. (R. at 71, 74-75, 304, 332.) Chaffins testified her daily activities included "sit[ting] around the house," watching television, preparing light meals and taking her medications. (R. at 58.) She stated she had difficulty staying focused because her mind would wander. (R. at 69-70.) Chaffins stated she had carpal tunnel in her right dominant hand, which made it difficult to write and type. (R. at 63-64.) She stated she could not lift "anything" with her right hand due to weakness and shakiness. (R. at 63-64.) Chaffins stated her left hand also was weak but not to the same degree as her right hand. (R. at 68.) She stated she was unable to put on a shirt because she could not fully extend her arms. (R. at 355.) Chaffins also stated she was unable to brush and style her hair due to limited range of motion. (R. at 355.)

Rebecca Kendrick, a vocational expert, was present and testified at Chaffins's hearing. (R. at 71-78.) Kendrick was asked to consider a hypothetical individual of Chaffins's age, education and work history, who had the residual functional capacity to perform simple, routine light work that did not require her to climb ladders, ropes or scaffolds, but who could occasionally perform other postural movements; who could occasionally bilaterally push and pull and who could perform no more than frequent bilateral handling and fingering; who could not work at unprotected heights, near unguarded moving machinery or operate a

---

[3] On appeal, Chaffins's arguments center around the ALJ's findings related to her upper extremity limitations and her mental residual functional capacity. Therefore, the court will limit its discussion to those facts relevant to Chaffins's arguments.

motorized vehicle; and who would need to work in a safe environment free of holes or pits in the floors. (R. at 75.) She stated such an individual could perform Chaffins's past work as a survey worker, as performed by Chaffin, but could not perform her other past work. (R. at 75-76.) Kendrick stated other work existed in significant numbers that such an individual could perform, including jobs as an information clerk, a folder and a cafeteria attendant. (R. at 76.) Kendrick stated the previously identified jobs, including Chaffins's past work as a survey worker, would be eliminated if the same hypothetical individual would be limited to only occasional use of the dominant upper extremity for gripping, handling, grasping, feeling and fingering. (R. at 77.) She stated all jobs would be eliminated should the individual be off task 15 percent of the workday and be absent from work two days or more a month. (R. at 78.)

In rendering her decision, the ALJ reviewed records from Dr. Nicolas Tulou, M.D., a state agency physician; David Deaver, Ph.D., a state agency psychologist; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. William Rutherford, Jr., M.D., a state agency physician; Dr. Emily Shields, M.D.; Buchanan Health Center, Inc., ("Buchanan Health"); Tonya McFadden, Ph.D., a licensed clinical psychologist; Dr. Brett Compton, O.D., an optometrist; The Health Wagon; Envision Eye Care; Dr. Chauncey Santos, M.D.; Merit Medical Group, Inc.; and Buchanan General Hospital.

On September 16, 2015, Chaffins was seen at Buchanan Health for complaints of bilateral hand pain, numbness and weakness. (R. at 456.) Chaffins denied anxiety, change in sleep pattern and mood changes. (R. at 456.) Tina M.

Compton, F.N.P., a family nurse practitioner, diagnosed coarse tremors.[4] (R. at 457.) On October 26, 2015, Rachel A. Fuller, F.N.P., a family nurse practitioner with Buchanan Health, reported Chaffins had tremors in both hands. (R. at 454.) Chaffins denied anxiety, change in sleep pattern and mood changes. (R. at 454.) Fuller diagnosed coarse tremors and referred Chaffins to neurology. (R. at 455.)

On July 5, 2016, Dr. Emily Shields, M.D., a neurologist,[5] saw Chaffins for complaints of a tremor and right wrist and bilateral shoulder pain. (R. at 422-25.) Chaffins reported her tremors were "really bad with writing." (R. at 422.) She denied anxiety, depression and memory lapses or loss. (R. at 422.) Dr. Shields reported Chaffins's extremities had no edema and normal digits; her trapezius elevation was intact bilaterally; her right grip was 4+/5; her bilateral arm abduction was 4/5; she had no muscle atrophy or involuntary movements; her sensory exam was normal; her affect and mood were appropriate; and she had normal attention skills. (R. at 424.) Dr. Shields stated Chaffins's tremor and carpal tunnel symptoms may be drug induced since Chaffins reported some improvement with her tremor with a lowered dose of Depakote. (R. at 424.) Dr. Shields diagnosed tremor; common migraine without aura; seizures; and right hand pain. (R. at 424.) Dr. Shields noted possible Dupuytren's contractures[6] on the left hand. (R. at 424.) On July 20, 2016, an electromyograph, ("EMG"), and nerve conduction velocity, ("NCV"), test showed moderate bilateral carpal tunnel syndrome. (R. at 426-29.)

---

[4] A coarse tremor is defined as one with large amplitude and irregular and slow oscillations. *See* https://medical-dictionary.thefreedictionary.com/coarse+tremor (last visited Dec. 8, 2021).

[5] Dr. Shields treated Chaffins for her seizure disorder.

[6] Dupuytren's contracture is a hand deformity that affects a layer of tissue that lies under the skin of the palm, eventually creating a thick cord that can pull one or more fingers into a bent position. The affected fingers cannot be straightened completely, which can complicate everyday activities. *See* https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/symptoms-causes/syc-20371943 (last visited Dec. 8, 2021).

On October 4, 2016, Chaffins saw Fuller and reported bilateral hand pain. (R. at 447.) She denied anxiety, change in sleep pattern and mood changes. (R. at 447.) Fuller diagnosed coarse tremors. (R. at 448.)

On July 11, 2017, Chaffins saw Fuller and reported bilateral hand pain, numbness and weakness. (R. at 443.) She denied anxiety, change in sleep pattern and mood changes. (R. at 443.) Fuller again diagnosed coarse tremors. (R. at 444.) On October 27, 2017, Chaffins saw Compton and reported bilateral hand pain. (R. at 440-41.) She denied anxiety, change in sleep pattern and mood changes. (R. at 440.) Chaffins's mood and affect were normal, and she had pain and tenderness to palpation of the lumbosacral spine. (R. at 441.) Chaffin was agitated and nervous and stated she did not feel safe going into clients' homes because her seizures were not under control. (R. at 441.) Compton placed Chaffin out of work for one month. (R. at 441.) On December 8, 2017, Chaffins saw Juanita K. Keen, F.N.P., a family nurse practitioner with Buchanan Health, for complaints of right shoulder pain, weakness, memory loss and anxiety. (R. at 438-39.) She stated she experienced memory loss and an inability to concentrate since she had her last seizure in October 2017. (R. at 438.) Keen reported Chaffins's mood and affect were normal; she had pain and tenderness to palpation in her lumbosacral spine; her right shoulder had tenderness and decreased range of motion; and she had sluggish reflexes in her upper and lower extremities. (R. at 438-39.) Keen ordered an x-ray of Chaffins's right shoulder. (R. at 439.)

On March 19, 2018, Tonya McFadden, Ph.D., a licensed clinical psychologist, evaluated Chaffins at the request of Disability Determination Services. (R. at 515-19.) Chaffins reported her mother passed away four days prior. (R. at 516.) McFadden reported Chaffins was pleasant and cooperative; she had an

anxious and tearful mood; her recent memory was moderately deficient; her concentration was markedly deficient; she displayed no evidence of distorted thoughts; and her judgment was normal. (R. at 518-19.) She diagnosed generalized anxiety disorder and unspecified depressive disorder. (R. at 518.) McFadden opined Chaffins could perform simple, repetitive tasks, and she could interact with co-workers and the public, but she may have difficulty dealing with stresses of competitive work. (R. at 519.)

On April 10, 2018, Dr. Nicolas Tulou, M.D., a state agency physician, completed a medical assessment, finding Chaffins could perform light work. (R. at 92-94.) He found Chaffins could frequently climb, balance, stoop, kneel, crouch and crawl. (R. at 93.) Dr. Tulou opined Chaffins was limited in her ability to reach overhead and to handle with her right upper extremity. (R. at 93.) He found Chaffins should avoid concentrated exposure to hazards, such as machinery and heights. (R. at 94.) Dr. Tulou opined Chaffins had no visual or communicative limitations. (R. at 94.)

On April 10, 2018, David Deaver, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Chaffins suffered from severe anxiety and obsessive-compulsive disorders. (R. at 89-90.) He opined Chaffins had moderate limitations[7] on her ability to understand, remember or apply information; to interact with others and to concentrate, persist or maintain pace; and no limitations on her ability to adapt or manage herself. (R. at 90.)

---

[7] The regulations define a moderate limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2020.)

That same day, Deaver also completed a mental assessment, indicating Chaffins had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to accept instructions and respond appropriately to criticism from supervisors. (R. at 95-97.) Deaver stated Chaffins's work-related mental abilities were, otherwise, not significantly limited. (R. at 95-96.) Deaver opined Chaffins could perform simple, routine, repetitive tasks. (R. at 96.)

On October 30, 2018, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF, finding Chaffins suffered from severe anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders. (R. at 130-131.) He opined Chaffins had moderate limitations on her ability to understand, remember or apply information; to interact with others and to concentrate, persist or maintain pace; and no limitations on her ability to adapt or manage herself. (R. at 131.)

That same day, Leizer also completed a mental assessment, indicating Chaffins had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity

to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to accept instructions and respond appropriately to criticism from supervisors. (R. at 135-37.) Leizer stated Chaffins's work-related mental abilities were, otherwise, not significantly limited. (R. at 136-37.) Leizer opined Chaffins could only occasionally deal with the public and perform simple, routine tasks. (R. at 137.)

On October 30, 2018, Dr. William Rutherford, Jr., M.D., a state agency physician, completed a medical assessment, finding Chaffins could perform light work. (R. at 133-35.) He found Chaffins could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes or scaffolds. (R. at 134.) Dr. Rutherford opined Chaffins could occasionally reach overhead and handle with her right upper extremity. (R. at 134.) He found Chaffins should avoid concentrated exposure to noise and moderate exposure to hazards, such as machinery and heights. (R. at 135.) Dr. Rutherford found Chaffins had no visual or communicative limitations. (R. at 134-35.)

On January 28, 2019, x-rays of Chaffins's right shoulder showed minor acromioclavicular, ("AC"), joint degenerative change. (R. at 576.) On February 28, 2019, Chaffins saw Amy Almany, N.P., a nurse practitioner with Merit Medical Group, for complaints of bilateral shoulder pain and right thumb pain. (R. at 566.) She reported she was able to perform daily activities. (R. at 567.) Chaffins's extremities had full range of motion and no edema; her right shoulder had tenderness with crepitus and no edema or erythema; and her right thumb had tenderness and a trigger thumb. (R. at 568.) Chaffins was diagnosed with seizure

disorder; hyperlipidemia; anxiety; depression; vitamin D deficiency; type II diabetes, uncontrolled; and osteoarthritis. (R. at 568.)

On April 15, 2019, Dr. Chauncey Santos, M.D., saw Chaffins for complaints of thumb pain. (R. at 552-54.) Chaffins reported she had recently experienced more seizures and had difficulty with her memory. (R. at 552.) She reported numbness and tingling in both hands, as well as triggering of both thumbs. (R. at 552.) Chaffins stated she had been dropping items from her hands. (R. at 552.) X-rays of Chaffins's hands showed mild osteoarthritic narrowing of both hands. (R. at 555.) Dr. Santos reported Chaffins had minimal pain when triggering her left thumb; she had a palpable nodule teres tendon on the volar aspect of the thumb; she had a negative Tinel's sign and Phalen's test; she had slight bilateral muscle atrophy; and she had full active range of motion of all fingers. (R. at 553.) Dr. Santos diagnosed trigger thumb of the left hand, which was not found to be severe and expected to improve the same way her right thumb had improved. (R. at 553.)

On May 2, 2019, and June 27, 2019, Dr. Shields reported Chaffins's mood and affect were appropriate; she had a normal attention span; her motor tone was normal; she had no muscle atrophy or involuntary movements; her sensory exam was normal; and she displayed no motor deficits. (R. at 543, 546.) An electroencephalogram, ("EEG"), dated May 28, 2019, was normal. (R. at 546.)

On September 24, 2019, Dr. Muhammed Javed, M.D., a physician with Merit Medical Group, saw Chaffins for complaints of seizures and neck and back pain. (R. at 561.) Chaffins denied depressive symptoms, changes in sleep habits and no changes in thought content. (R. at 561.) Dr. Javed reported Chaffins had tenderness in the cervical and lumbar spine. (R. at 561.) Again, on December 30,

2019, Chaffins denied depressive symptoms, changes in sleep habits and no changes in thought content. (R. at 601.)

On January 26, 2020, Chaffins presented to the emergency department at Buchanan General Hospital after having a seizure and falling, causing injuries to her face, nose and right shoulder. (R. at 607-22.) On examination, Chaffins had mild tenderness in her right shoulder with no limitation of range of motion; she had a normal mood and affect; her speech was normal; she had no motor or sensory deficits; and her reflexes were normal. (R. at 608.) A CT scan of Chaffins's cervical spine showed mild scoliosis of the cervical spine on the left and degenerative disc disease and spondylosis of the C4-C5 and C6-C7 disc spaces. (R. at 609-10.) X-rays of Chaffins's right shoulder showed calcific opacity in the soft tissues abutting the lateral aspect of the acromion and mild degenerative changes at the right AC joint. (R. at 610.) A CT scan of Chaffins's head showed maxillary sinus disease. (R. at 611.) Chaffins was diagnosed with a generalized seizure, history of epilepsy; acute anterior epistaxis;[8] and acute cervical strain. (R. at 612.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2020). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§

---

[8] Epistaxis is a nosebleed. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 274 (1995).

404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Chaffins argues the ALJ erred by improperly determining her residual functional capacity by failing to properly evaluate her upper extremity limitations and by failing to properly consider the opinions of Dr. Tulou, Dr. Rutherford, McFadden and Leizer. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 11-17.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368

(Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920(a) (2020) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[9]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2020) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2020).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical

---

[9] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2020). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2020).

opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2020).[10] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how she considered each of them. Instead, when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2020).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly

---

[10] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

Chaffins argues the ALJ erred by improperly determining her residual functional capacity by failing to properly evaluate her upper extremity limitations and by failing to properly consider the opinions of Dr. Tulou, Dr. Rutherford, McFadden and Leizer. (Plaintiff's Brief at 11-17.) A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2020). The residual functional capacity assessment is based on all the relevant evidence, including the medical records, medical source opinions and the individual's subjective allegations and description of her own limitations. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2020).

The ALJ found Chaffins had the residual functional capacity to perform simple, routine light work that did not require her to climb ladders, ropes or scaffolds, but she could occasionally perform other postural movements; that required only occasional bilateral pushing and pulling and no more than frequent bilateral handling and fingering; that did not require her to work at unprotected heights, near unguarded moving machinery or to operate a motorized vehicle; and she would need to work in a safe environment free of holes or pits in the floors. (R. at 22.)

In making her residual functional capacity finding, the ALJ stated she found Dr. Tulou's opinion that Chaffins had a limited ability to reach overhead and to handle with her right upper extremity "partially persuasive" and "inconsistent." (R.

at 27, 93.) The ALJ noted that, although Dr. Tulou based this opinion on Chaffins having decreased range of motion in her right shoulder and sluggish reflexes in her upper and lower extremities, he also found she could frequently perform all postural movements, including climbing ladders, ropes and scaffolds. (R. at 27.) Dr. Tulou based his opinion on Chaffins's July 2016 EMG and NCV test results, which showed she had moderate bilateral carpal tunnel syndrome. (R. at 93-94, 426-29.) He also relied on Chaffins's December 2017 musculoskeletal evaluation, which showed Chaffins had tenderness in her spine and shoulder; decreased range of motion in the right shoulder; and sluggish reflexes in the upper and lower extremities. (R. at 93-94, 439.) In addition, Dr. Tulou noted Dr. Shields diagnosed Chaffins with tremor and right hand pain in July 2016. (R. at 94, 424.)

The ALJ stated she found Dr. Rutherford's opinion that Chaffins could occasionally handle and reach overhead due to shoulder pain, limited range of motion and bilateral carpal tunnel syndrome "somewhat persuasive." (R. at 28, 134.) The ALJ stated Chaffins never received treatment for carpal tunnel syndrome and sporadically complained of thumb pain. (R. at 28.) She found Chaffins's objective evidence conflicted with the subjective; thus, it was "only somewhat supported." (R. at 28.)

Based on my review of the record, I do not find substantial evidence exists to support the ALJ's evaluation of Chaffins's upper extremity limitations. The record shows Chaffins complained of bilateral hand pain, numbness and weakness, as well as tremors in both hands in 2015, and she was diagnosed with coarse tremors through 2017. (R. at 443-44, 447-48, 454-57.) In July 2016, Chaffins complained of a tremor in her right wrist, as well as bilateral shoulder pain. (R. at 422.) An EMG and NCV showed moderate bilateral carpal tunnel syndrome. (R. at

426-29.) Although Dr. Shields suspected Chaffins's tremor and carpal tunnel symptoms could be drug induced, the record shows Chaffins continued to complain of bilateral hand pain through October 2017. (R. at 440, 443, 447.) In addition, Dr. Shields noted possible Dupuytren's contractures of Chaffins's left hand. (R. at 424.) The ALJ noted Chaffins "sporadically complained of thumb pain," but failed to recognize her complaints of bilateral shoulder pain, with her primary complaint focusing on her right shoulder. (R. at 438, 566, 607.) In December 2017, Chaffins's right shoulder had tenderness and decreased range of motion, and her reflexes were sluggish in both her upper and lower extremities. (R. at 439.) In January 2019, x-rays of Chaffins's right shoulder showed minor degenerative changes of the AC joint. (R. at 576.) In February 2019, Chaffins had right shoulder tenderness and was diagnosed with osteoarthritis. (R. at 568.) In April 2019, she reported numbness and tingling in both hands, and, although she had full active range of motion of all fingers, examination showed slight bilateral muscle atrophy, and x-rays of her hands showed mild osteoarthritic narrowing in both hands. (R. at 552-53, 555.) In January 2020, x-rays of Chaffins's right shoulder showed calcific opacity in the soft tissues abutting the lateral aspect of the acromion and mild degenerative changes at the right AC joint. (R. at 610.) All of this evidence supports, and is consistent with, the opinions of Drs. Tulou and Rutherford limiting Chaffins's ability to reach and handle. In fact, the record contains no medical evidence to support the ALJ's finding of no limitation on Chaffins's ability to reach.

I do, however, find the ALJ properly evaluated the opinions of Leizer and McFadden. Chaffins contends the ALJ erred by failing to assign greater limitations regarding concentration, interacting with others and dealing with work stress. (Plaintiff's Brief at 15-17.) The ALJ found Chaffin had the mental residual

functional capacity to perform simple, routine light work. (R. at 22.) In making this
residual functional capacity, the ALJ stated she found McFadden's opinion
"somewhat persuasive" because portions of the opinion were consistent with and
supported by the longitudinal evidence of record. (R. at 26-27.) Chaffins reported
she had never received inpatient or outpatient mental health treatment. (R. at 518.)
McFadden reported Chaffins was pleasant and cooperative; she had an anxious and
tearful mood; her recent memory was moderately deficient; her concentration was
markedly deficient; she displayed no evidence of distorted thoughts; and her
judgment was normal. (R. at 518-19.) The ALJ explained McFadden evaluated
Chaffins four days after her mother passed away, and Chaffins understandably
reported a depressed mood and anxiety. (R. at 26, 516.) McFadden opined Chaffins
could perform simple, repetitive tasks, and she could interact with co-workers and
the public, but she may have difficulty dealing with stresses of competitive work.
(R. at 519.)

   The ALJ noted Chaffins reported difficulty with memory and concentration
and accounted for these limitations by limiting her to simple, routine work. (R. at
22-28.) The regulations define unskilled work as "work which needs little or no
judgment to do simple duties that can be learned on the job in a short period of
time." 20 C.F.R. §§ 404.1568(a), 416.968(a) (2020); *Menkes v. Astrue,* 262 F.
App'x 410, 412 (3d Cir. 2008) ("[P]erforming a 'simple routine task' typically
involves low stress level work that does not require maintaining sustained
concentration."). Unskilled work is generally low stress and involves remembering
only very short and simple instructions in a routine environment in which
"concentration is not critical." Program Operations Manual System, ("POMS"), DI
25020.010(B)(3), available at http://policy.ssa.gov/poms.nsf/lnx/0425020010

(effective Apr. 5, 2007) (explaining that unskilled work involves "remember[ing] very short and simple instructions," and that "concentration is not critical").

The ALJ stated she found Deaver's opinion "partially persuasive" because the record, including the psychological consultative examination, supported Chaffins's ability to perform simple and routine tasks. (R. at 27-28.) The ALJ found Leizer's opinion "persuasive" because it was consistent with the psychological consultative examination and supported by Chaffins's lack of treatment for mental health impairments and her ability to maintain her activities of daily living. (R. at 28.) As noted by the ALJ, Leizer stated Chaffins should have only occasional social interaction, even though he also found she was not significantly limited in her ability to get along with peers. (R. at 137.)

Although Deaver and Leizer found Chaffins had moderate limitations in her ability to interact with others and to concentrate, persist or maintain pace, examination findings show Chaffins generally had intact functioning with a cooperative attitude; normal mood and affect; normal speech; intact thought process and content; normal attention span, language and fund of knowledge; and no depressive symptoms. (R. at 439, 441, 543, 546, 561, 601, 608.) Chaffins denied anxiety and depressive symptoms; changes in her sleep pattern; memory lapses or loss; and mood changes. (R. at 440, 443, 544, 561, 601.) As noted by the ALJ, Chaffins was consistently reported to be cooperative and pleasant, and she performed a range of daily activities, including spending time with others, shopping in stores, attending church and caring for her grandchildren, indicating no more than mild limitations interacting with others. (R. at 21, 28, 277, 281.)

Based on the above, I do not find substantial evidence exists to support the ALJ's evaluation of Chaffins's upper extremity limitations and her physical residual functional capacity finding. I further find substantial evidence exists to support the ALJ's consideration of the opinion evidence and her mental residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence does exist in the record to support the ALJ's consideration of the opinion evidence as to Chaffins's mental residual functional capacity;

2.  Substantial evidence does not exist in the record to support the ALJ's consideration of the opinion evidence as to Chaffins's physical residual functional capacity; and

3.  Substantial evidence does not exist in the record to support the Commissioner's finding that Chaffins was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Chaffins's and the Commissioner's motions for summary judgment; vacate the Commissioner's decision denying benefits; and remand Chaffins's claims to the Commissioner for further development.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    December 9, 2021.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE